UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| DANA SOPER, | : | Case No. 1:07-cv-645 |
| | : | |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| | : | |
| INFUSION PARTNERS, INC., *et al.* | : | |
| | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION[1] THAT PLAINTIFF'S
MOTION TO SET ASIDE THE ADMINISTRATIVE DECISION (Doc. 17) BE
DENIED; AND (2) THIS CASE BE CLOSED**

This case is before the Court on Plaintiff Dana Soper's motion to set aside the administrative decision (Doc. 17) and Defendants' response (Doc. 19).

## I. BACKGROUND FACTS

Plaintiff was a founder and part owner of Nations Healthcare, which later became Defendant Infusion Partners, Inc. ("Infusion"). (Doc. 17, Ex. A at 16). In June 2003, Plaintiff sold her interest in Infusion to Defendant Deaconess Associations, Inc. ("DAI") and remained an employee of Infusion. (*Id.*) To complete the sale, Plaintiff executed a Share Redemption Agreement which contained a covenant not to compete. (Doc. 15 at IP015).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

On June 7, 2006, Rick Gandersman, a member of Infusion's Board of Directors, sent a letter to the individuals who intended to participate in Infusion's Supplemental Executive Compensation Plan ("the Plan"), including Plaintiff, outlining the benefits and requirements of the Plan. (Doc. 15 at IP002). In his letter to Plaintiff, Mr. Gandersman stated, "As part of the program, it will be necessary for all participating employees to sign a non-compete agreement. The non-compete that is a part of the Purchase Agreement between Dana Soper and Infusion Partners will constitute meeting this requirement." (*Id.*) Mr. Gandersman concluded that Plaintiff need not sign a new non-compete agreement after reviewing her prior non-compete agreement and discussing the differences with attorney Rob Shank of Frost Brown Todd, LLC. (Doc. 17, Ex. B ¶ 12).

On October 27, 2006, Mr. Anthony Woods, the Chairman of the Board of Directors of Infusion, announced that DAI had reached an agreement to sell Infusion. (Doc. 17, Ex. A at 26). Plaintiff did not agree with DAI's philosophy, so she resigned. (*Id.*)

On January 3, 2007, Plaintiff sent Jeff Beckman, the newly approved Plan Administrator, a letter to confirm that she was entitled to receive the benefits allocated to her under the Plan beginning February 1, 2007. (Doc. 15 at IP001). Mr. Beckman did not respond to Plaintiff's letter, but she later learned that DAI was denying her benefits because she did not sign the required Non-Compete Agreement. (Doc. 17, Ex. A at 89-90). DAI required that Plaintiff sign a new Non-Compete Agreement in order to receive the benefits owed to her under the Plan. (Doc. 17, Ex. A at 90; Doc 15 at IP047). Plaintiff refused, citing the June 7, 2006 letter from Mr. Gandersman, which stated that

her prior non-compete agreement would satisfy the Plan's requirements. (Doc. 17, Ex. A at 90-92).

Plaintiff claims that Defendants improperly denied her benefits under Infusion's Plan in violation of ERISA. Plaintiff claims that she was entitled to a distribution under the Plan, but that Defendants withheld the distribution because Plaintiff did not sign a new non-compete agreement. Although the Plan required that all participants sign a non-compete agreement, Plaintiff claims that the Plan and Defendants did not identify a specific document to be signed. Additionally, Plaintiff claims that Defendant is estopped from denying Plaintiff benefits under the Plan because she relied to her detriment on representations made to her by a member of Infusion's Board of Directors, Mr. Gandersman. Plaintiff alleges that Mr. Gandersman assured her that the non-compete agreement she previously signed would satisfy the terms of the Plan and claims that she relied on this promise when she resigned from Infusion. Plaintiff now seeks her vested benefits.

## II. STANDARD OF REVIEW

Plaintiff's claim for benefits is controlled by ERISA, specifically 29 U.S.C. § 1131(a)(1)(B). A plan administrator's decision to deny ERISA benefits is subject to a *de novo* standard of review, unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) ("If the administrator and the participant both offer rational, but conflicting interpretations of a plan's language, the administrator's interpretation controls."). Plaintiff concedes that the

arbitrary and capricious standard of review is applicable. (Doc. 17 at 4, 7). Under the "arbitrary and capricious" standard of review, a court will uphold a benefit determination if it is rational in light of the plan's provisions. *Darland v. Fortis Benefits Ins. Co.*, 317 F.3d 516, 527 (6th Cir. 2003); s*ee also Davis v. Kentucky Fin. Cos. Ret. Plan,* 887 F.2d 689, 693 (6th Cir. 1989), *cert. denied,* 495 U.S. 905 (1990) ("under the highly deferential, 'least demanding form of judicial review,' a court *must* affirm the administrator's decision if the record evidence offers a reasoned explanation for the decision") (emphasis added).

### III. ANALYSIS

As an initial matter, Plaintiff relies extensively on materials outside of the administrative record (*See* Doc. 15) to establish her claim for denial of benefits under ERISA. Such materials cannot be considered because this Court's review is limited to those materials in the administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618-19 (6th Cir. 1998) (where an ERISA beneficiary sues for the recovery of benefits, the district court must limit its review to the administrative record, conducting that review pursuant to an arbitrary and capricious standard). A court may only consider the evidence available to the administrator at the time the final decision was made. *Miller v. Metro. Life Ins. Co,* 925 F.2d 979, 986 (6th Cir. 1991).

A court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part. *Miller*, 925 F.2d at 986. On April 25, 2008, the undersigned issued an Order

granting Plaintiff leave to conduct additional discovery on her promissory estoppel claim. (Doc. 13). However, the Court's review of these materials is limited to the promissory estoppel claim.

### A. Whether The Administrator Abused His Discretion By Denying Plaintiff Benefits Under The Plan

Plaintiff's argument is twofold. First, Plaintiff alleges that the Plan was in effect on June 7, 2006 when Mr. Gandersman sent Plaintiff the letter stating that she was not required to sign the Non-Compete Agreement. (Doc. 17 at 4). Second, Plaintiff alleges that Mr. Gandersman had administrative authority under the Plan on June 7, 2006 to set the terms of Plaintiff's non-compete agreement. (*Id*. at 6).

*1. Whether the Plan was in effect on June 7, 2006*

Plaintiff claims that paragraph 1 (i) of the Plan states that the effective date of the Plan is January 1, 2006 (Doc. 15 at IP157), and, therefore, Defendants' contention that the Plan was not in effect until December 14, 2006, when it was approved by the DAI Board, is inconsistent with the plain terms of the Plan. Furthermore, even if the Plan did require the DAI Board's approval, Plaintiff presents evidence that the Board approved the Plan in May 2006, not December 2006. (*See* Doc. 17, Exs. D, E, F, G).

Defendants do not contest that the plain language of the Plan states that the Plan was effective January 1, 2006, but argue instead that because the Plan was not approved by the DAI Board until December 14, 2006, it was not effective until that date. (Doc. 15 at IP047, 052-55). Under these circumstances, as this Court has previously recognized,

"until a plan is adopted, there is no plan, only the possibility of one." *Muse v. IBM Corp.*, 103 F.3d 490, 494 (6th Cir. 1996).

Furthermore, in support of the argument that the DAI Board had earlier approved the Plan in May 2006, Plaintiff cites to letters, emails and other documents which are not part of the administrative record. (Doc. 17, Exs. D, E, F, G). The Court cannot consider these documents[2] because they are not part of the administrative record. *Wilkins*, 150 F.3d at 618-19.

Here, then, although the Administrator and Plaintiff both offer rational, but conflicting interpretations of the Plan, the Administrator's interpretation controls. *Firestone Tire & Rubber Co.*, 489 U.S. at 115. Accordingly, this Court must affirm the Administrator's finding that the Plan was not effective until December 14, 2006.

*2.	Whether Mr. Gandersman had administrative authority on June 7, 2006*

Mr. Gandersman was the chief executive officer of DAI and in 2006 he served on the Board of Directors of Infusion with Mr. Woods. (Doc. 17, Ex. B at ¶¶ 1, 4; Doc. 22 at ¶ 3). Plaintiff submits evidence that Mr. Gandersman believed that he was the original Plan Administrator based on a mutual understanding between himself and Mr. Woods, who were the only two members of the Infusion Board on January 1, 2006. (Doc. 17, Ex. B ¶ 10). However, Mr. Gandersman left his employment with DAI in November 2006, and, after his resignation, he was no longer on the Board of Directors of Infusion. (Doc.

---

[2] Although this Court is precluded from considering these documents, they advance a persuasive argument that the Plan was approved by the DAI Board in May, 2006.

17, Ex. C at 39, 54-55). Accordingly, Mr. Gandersman was not the Plan Administrator when the Plan was approved by the DAI Board on December 14, 2006.

At the time Plaintiff made her claim for benefits, the Administrator was Mr. Beckman, the Vice President of Human Resources and Organizational Development of DAI. (Doc. 15 at IP 055). By its letter through counsel of March 19, 2007, the Administrator determined that Plaintiff never signed the Non-Compete Agreement as required by the Plan. (*Id*. at IP 029). In response to Plaintiff's claim that Mr. Gandersman waived the requirement that Plaintiff execute the Non-Compete Agreement, the Administrator determined that Mr. Gandersman was not authorized to do so by the Plan documents. Specifically, Paragraph 9 of the Plan confirms that "the terms of such agreement shall be established by the Administrator." (*Id*. at IP 060). The Plan defined "Administrator" as "the Board of Directors of the Infusion Partners, Inc., or any other person, committee or other entity designated by the Board as Administrator." (*Id*. at IP 056). The Plan defined "Board" as "the Board of Directors of Deaconess Associations, Inc." (*Id*.) The amendment adopted on December 14, 2006, defined Administrator as "the Vice President of Human Resources and Organizational Development of Deaconess Associations, Inc., or any other person, committee or entity designated by the Board as Administrator." (Doc. 15 at IP 055). Thus, the Administrator determined that Mr. Gandersman could not have waived Plaintiff's condition of signing the Non-Compete Agreement since Mr. Gandersman was not the Administrator who was authorized to establish the terms of the Non-Compete Agreement. (*Id*. at IP 029).

Nonetheless, in a March 19, 2007 letter, Plaintiff was offered the opportunity to sign the Non-Compete Agreement to obtain benefits under the Plan. (Doc. 15 at IP 029). Instead of signing the Non-Compete Agreement, Plaintiff again claimed that this requirement had been waived by Mr. Gandersman and offered additional information to the Administrator. (*Id*. at IP 036-043). After reviewing and investigating that information, the Administrator again determined that Mr. Gandersman did not have authority to waive this requirement and thus that any alleged waiver was not valid. (*Id*. at IP 047). Accordingly, by letter of May 3, 2007, Plaintiff was informed that she had still not signed the Non-Compete Agreement required by the Plan, and she was given another opportunity to receive benefits under the Plan if she would sign the Non-Compete Agreement. (*Id*.) Plaintiff again chose not to sign the Non-Compete Agreement, and, instead, filed the instant suit.

The undersigned finds that the *record* evidence offers a reasoned explanation for the Administrator's decision. Accordingly, this Court must affirm the decision denying Plaintiff's benefits.

    **B**    **Plaintiff's Claim For Promissory Estoppel**

The Plan in the case at bar is a "pension plan" as defined by ERISA, 29 U.S.C. § 1002(2)(A) which states:

> "the terms 'employee pension benefit plan' and 'pension plan' mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund or program -
> (i) provided retirement income to employees, or
> (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond."

In the Plan at issue, contributions were made by Infusion to each Participant's account pursuant to Paragraph 3 of the Plan captioned "Credits to Participant Accounts." (Doc. 15 at IP160). Pursuant to Paragraphs 4 and 6 of the Plan, the monies in these Accounts were held by Infusion as deferred compensation for the Participants of the Plan, with the Accounts being credited with interest each year. (*Id*. at IP160-61). The Plan "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond" and is therefore a "pension plan" under ERISA. 19 U.S.C. § 1002(2)(A)(ii).

In *Sprague v. General Motors Corp.*, 133 F.3d 388, 403-04 (6th Cir. 1998), the Sixth Circuit recognized that "equitable estoppel may be a viable theory in ERISA cases." However, in *Bielkie v. General Motors Corp.*, No. 98-1873, 1999 U.S. App. LEXIS 20318, at *2 (6th Cir. Aug. 19, 1999), the Sixth Circuit clarified that *Sprague's* "holding is limited to welfare plans." As this Court has previously recognized, "the Sixth Circuit has not yet recognized an ERISA equitable estoppel claim in defined benefit pension plans and *dicta* strongly suggests that because of actuarial concerns, it should not be applied in cases involving pension plans." *Ramsey v. Formica Corp.*, No. 1:04cv149,

2004 U.S. Dist. LEXIS 9558, *3 (S.D. Ohio Apr. 6, 2004) (citing *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1300 (6th Cir. 1991)) (permitting limited application of federal common law estoppel principles in the interpretation of an ERISA welfare benefit plan, but "expressing no opinion as to the application of estoppel principles in other situations."). *See also Thomas v. Miller*, 489 F.3d 293, 297 (6th Cir. 2007) ("The doctrine of equitable estoppel can apply in ERISA cases when welfare benefit plans, rather than pension plans, are at issue.").

As the Sixth Circuit has explained:

> "pension benefits are typically paid out of funds to which both employers and employees contribute. Contributions and pay-outs are determined by actuarial assumptions reflected in the terms of the plan. If the effective terms of the plan may be altered by transactions between officers of the plan and individual plan participants or discrete groups of them, the rights and legitimate expectations of third parties to retirement income may be prejudiced."

*Armistead*, 944 F.2d at 1300; s*ee also Bond v. General Motors Acceptance Corp.*, No. 96-3945, 1998 U.S. App. LEXIS 1868, at *6 (6th Cir. Feb. 5, 1998).[3]

Accordingly, because the Plan at issue is a pension plan and actuarial concerns are at issue, Plaintiff's promissory estoppel claim is improper. Therefore, the Court finds that Plaintiff is foreclosed from bringing an equitable estoppel claim pursuant to ERISA.

---

[3] "The application of estoppel to increase the membership of the beneficiary class or expand the benefits payable to some plan beneficiaries of funded pension benefit plans (whereby employers create a finite fund composed of employer and employee contributions from which employee benefits are paid, such as the GM Pension Plan at issue herein) would be inappropriate because it could violate the strict vesting and accrual requirements of the plan and might threaten the actuarial soundness of the entire plan.") (citing *Miller v. A2 Healthcare*, Case No. 1:05cv607, 2008 U.S. Dist. LEXIS 73161, at *7-8 (S.D. Ohio Sept. 24, 2008)).

## IV.    CONCLUSION

Accordingly, based on the foregoing, the undersigned **RECOMMENDS** that Plaintiff's motion to set aside the administrative decision (Doc. 17) be **DENIED**, and this case be **CLOSED.**

Date: November 26, 2008            s/Timothy S. Black
                                   Timothy S. Black
                                   United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DANA SOPER, | : | Case No. 1:07-cv-645 |
| | : | |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| | : | |
| INFUSION PARTNERS, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **TEN (10) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).